THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LEONARDO, S.P.A., an Italian company,

Plaintiff,

v.

THE BOEING COMPANY, a Delaware corporation,

Defendant.

No. 2:19-cv-2082

**STIPULATED MOTION AND AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND ORDER**

**NOTED ON MOTIONS CALENDAR: August 12, 2020**

Plaintiff Leonardo, S.p.A ("Leonardo") and Defendant The Boeing Company ("Boeing") (collectively, the "parties") hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter. The parties are entering into this agreement in an effort to reduce the time, expense, and other burdens associated with the discovery of ESI and privileged material, and to clarify the scope of the parties' obligations to preserve and produce such information.

**A.    Definitions**

1.      "Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in the Federal Rules of Civil Procedure.

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 1

2.      "Email" means electronic messages sent or received asynchronously via messaging applications, including, but not limited to, Microsoft Outlook or Google Gmail, including any documents incorporated as attachments.

3.      "Embedded objects" means files contained within other files. A common example is an Excel file with underlying data and numbers embedded as a visual chart in a PowerPoint or Word file. Extracting embedded objects means that the Excel file is extracted from the PowerPoint or Word file and loaded as a separate record. The Excel file in this example would be considered a "child" of the PowerPoint or Word file. Inline images are considered embedded objects for purposes of this definition. Email attachments are not considered embedded objects for purposes of this definition.

4.      "ESI" is an abbreviation of "electronically stored information" and shall have the same meaning and scope as set forth in the Federal Rules of Civil Procedure.

5.      "Extracted Text" means the text extracted from a native format file and includes at least all header, footer, and document body information.

6.      "Load File" means an electronic file that is used to import all required production information into a document database, including document images, extracted and/or OCR text, native files where required, and metadata, as well as information indicating document and page breaks, and document relationships such as those between an email and its attachments and a document and information related to embedded content.

7.      "Metadata" means structured information about ESI that is created by the file system or application, embedded in the document or email and sometimes modified through ordinary business use. Metadata of the ESI describes the characteristics, origins, and usage of the collected ESI.

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 2

8.    "Native Format" means the format of ESI in the application in which the ESI was originally created.

9.    "OCR" means the optical character recognition technology used to read paper documents or electronic images of documents and output such documents to a searchable text format. The latter text is also referred to as the "OCR text" or simply "OCR."

10.    "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper documents.

**B.    General Principles**

1.    An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.    As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

**C.    ESI Disclosures** Within 30 days of entry of this Order, or at a later time if agreed by the parties, each party shall disclose:

1.    <u>Custodians and Organization Charts.</u>  The fifteen custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control. To the extent such documents exist and are reasonably available, the parties

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

also agree to provide relevant organizational charts (or similar documents) that will assist the other party in identifying the proposed custodian's current position within the company.

2.    <u>Non-Custodial Data Sources.</u>  A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI. This disclosure shall include, without limitation, any hard copy data sources.

3.    <u>Third-Party Data Sources.</u>  A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.    <u>Inaccessible Data.</u>  A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

5.    <u>Foreign Data Privacy Laws.</u>  Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. If the producing party identifies a particular discovery request that the producing party claims would call for production of documents in violation of a foreign data privacy law, the parties agree to meet and confer to address any such objection.

**D.    ESI Discovery Procedures**

1.    <u>On-site inspection of electronic media.</u>  Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or agreement by the parties.

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

2. <u>Search Methodology.</u>  The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

a.     Prior to running searches:

i.     The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information.  The producing party may provide unique hit counts for each search query.

ii.     The requesting party is entitled to, within 14 days of the producing party's disclosure, add no more than 15 search terms or queries to those disclosed by the producing party absent a showing of good cause or agreement of the parties.

iii.     The following provisions apply to search terms / queries of the requesting party.  Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided.  A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term.  A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each or phrase shall count as a separate search term unless they are variants of the same word.  In response, the producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query. A search that returns more than 1,000 unique documents, excluding families, is presumed to be overbroad.

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

b.      After production:  Within 21 days of the producing party notifying the receiving party that it has substantially completed the production of documents responsive to a request, the responding party may request no more than 10 additional search terms or queries. The immediately preceding section (Section D(2)(a)(iii)) applies.

**E.      Negotiation of Search Protocol**

1.      The parties agree, subject to the principle of proportionality and the parties' shared goal of efficiency, to consider additional custodians, central repositories, or search terms in good faith as discovery proceeds to the extent that fact discovery reveals that the additional custodians, central repositories, or search terms are likely to return substantial non-duplicative responsive materials.

2.      In addition, the parties agree that, as additional sets of Rule 34 document requests are issued, the parties will meet and confer to determine whether additional custodians, central repositories, or search terms may be warranted.

**F.      Miscellaneous Provisions**

1.      The parties agree to negotiate any discovery-related dispute in good faith and attempt to resolve any such dispute without involving the Court.

2.      Nothing in this Order shall preclude the producing party from collecting or producing additional materials beyond those identified pursuant to the procedure described above.

3.      Upon reasonable request, a party shall disclose information relating to network design, the types of databases, organizational chart for information systems personnel, and destruction/overwrite policy.

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 6

4.      No inspection of electronic media shall be required absent a demonstration by the requesting party of specific need in light of the proportionality standards set forth in Fed. R. Civ. P. 26(b) and good cause or by agreement of the parties.

5.      The parties may use reasonable techniques to further identify relevant or irrelevant documents, including, but not limited to, predictive coding and other technology-assisted review. The producing party will respond to reasonable requests for information from the requesting party regarding the producing party's use of such tools.

**G.      Format for Production of ESI**

1.      <u>General Format Requirements.</u>  The parties will produce ESI in accordance with the following general format requirements.

a.      ESI will be produced to the requesting party with searchable text, in the format set forth herein and as otherwise agreed. Acceptable formats include, but are not limited to, native files, multi-page TIFFs (with a companion OCR or extracted text file), single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files), and searchable PDF.

b.      Single-page Group IV TIFFs should be provided, at least 300 dots per inch (dpi). Single-page TIFF images should be named according to the unique bates number, followed by the extension ".TIF". Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Documents containing color need not be produced in color, except that (i) word processing documents that contain hidden text or comments shall be produced in color in JPG or PNG format. The producing party will honor reasonable requests to provide color image of a document.

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

c.      For each document originating in electronic format, a text file containing the full text of each document should be provided along with the image files and metadata. Text of native files should be extracted directly from the native file. The text file should be named according to the unique bates number, followed by the extension ".TXT." The parties agree that the full text and/or OCR of any document will not be contained within a database load file, but rather as a standalone file with each text file containing an entire document as they are defined.

d.      An image load file (.OPT, .LFP) will be produced that can be loaded into commercially acceptable production software (e.g., Opticon, iPro). Each image in a production must be referenced in the corresponding image load file. An exemplar load file format is below.

ABC0000001,PROD001,\\IMAGES\001\ABC0000001.tif,Y,,,2

ABC0000002,PROD001,\\IMAGES\001\ABC0000002.tif,,,,

ABC0000003,PROD001,\\IMAGES\001\ABC0000003.tif,Y,,,1

e.      Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheets, computer slide presentations, audio files, video files, databases, structured data files, and drawing files, will be produced in native format. In addition, a party may request that, for good cause, a specific file be produced in native format, and the producing party will endeavor to accommodate any such requests. The Parties agree that when producing a native file, they will include a TIFF image as a placeholder for the file to represent the file in the production set. The TIFF image placeholder for a native file should be branded with a unique Bates number and state "Document Produced in Native Format" on the TIFF image. The native file should then be renamed to match the Bates number assigned to the document, along with its original file extension. The filename field produced in the production load file that reflects the original metadata should maintain the original file name.

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 8

f.      Each document image file shall be named with a unique Bates number. Bates number file names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history, to the extent reasonably practical.

g.      If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

h.      Parent-child relationships (the association between an attachment and its parent document) must be preserved in such a way that a document and any attachments to that document are produced in the same production set and the relationships are identifiable. The parties agree to provide beginning attachment and ending attachment fields in the database load file to capture the entire production number range for the parent/child(ren) documents.

i.      Embedded objects shall not be treated as separate files. A party may request that documents that contain embedded files be produced as separate files. The requesting party shall provide a list of the BEGBATES values of documents from which they request embedded files. Upon receipt, the producing party shall within a reasonable time to provide the embedded files in production format as required by the governing provisions of this Order. Email attachments are not considered embedded objects but are treated as separate documents under this Order.

j.      Before any party produces electronic data that is not easily converted to static TIFF images, such as databases, CAD drawings, GIS data, websites, social media, etc., the parties will meet and confer to discuss the appropriate format for the production of said documents.

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

k.       When a document requires redaction, the parties agree that native files, full text and/or OCR, and specified metadata fields will be excluded. Metadata fields for exclusion in redacted documents include SUBJECT and FILE_NAME. The TIFF image should show the caption [Redacted-Privileged, etc.] where applicable and a production load file field should be populated to indicate the document contains a redaction.

l.       The parties will process all ESI for production using the Pacific Standard Time Zone.

2.       <u>De-duplication.</u>  To the extent reasonably practicable, the parties shall produce only a single copy of a responsive document and may de-duplicate their ESI production (based on MD5 or SHA-1 hash values at the document level) across custodial and non-custodial data sources after disclosure to the requesting party. Duplicate custodian information removed during the de-duplication process shall be tracked in a duplicate/other custodian field in the database load file. For emails with attachments, the hash value is generated based on the parent/child document grouping. However, metadata identifying all custodians in possession of each document that is removed as a duplicate must be produced in an "CUSTODIANS_ALL" field in the production load file. To accommodate rolling productions, for ESI that is removed as duplicate ESI from earlier productions, the producing party will provide the requesting party with an overlay file no later than five (5) days after the date of each rolling production and will include an updated "CUSTODIANS_ALL" metadata information, which will be updated with the duplicate custodians' names. Attachment(s) should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates.

3.       <u>Email Threading.</u>  The parties may use analytics technology to identify email threads and should, to the extent reasonably practicable, only produce the unique most inclusive

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

copy and related family members and may exclude lesser inclusive copies. Email threading shall not exclude from production shorter versions of an email exchange that include attachments, email exchanges that branch off into separate threads/conversations, or emails in which a user changes the text of a prior email.  Upon reasonable request, the producing party will produce a less inclusive version.

4.      Metadata fields.   The parties agree that the following metadata fields will be produced (in the order listed below), to the extent such data is reasonably accessible and non-privileged.[1]

- BEGBATES: Beginning Bates number as stamped on the production image;

- ENDBATES: Ending Bates number as stamped on the production image;

- BEGATTACH: First production Bates number of the first document in a family;

- ENDATTACH: Last production Bates number of the last document in a family;

- CUSTODIAN: Custodian from whom document originated, or storage location if no custodian;

- CUSTODIANS_ALL[2]: Custodian(s) that had electronic files that were removed due to de-duplication;

- AUTHOR: Any value populated in the Author field of the document properties;

- LAST_AUTHOR: The last author to have modified the document;

- FROM: The name and email address of the sender of an email;

- TO: All recipients that were included on the "To" line of an email;

---

[1] All dates shall be in the following format: MM/DD/YYYY
[2] The CUSTODIANS_ALL field should be populated by the party to identify other custodians in possession of the document before deduplication is applied to the data set.

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 11

- CC: All recipients that were included in the "CC" line of an email;

- BCC: All recipients that were included in the "BCC" line of an email;

- SUBJECT[3]: The subject line of an email;

- FILE_NAME[4]: File name of an electronic documents, including loose files and attachments to email;

- FILE_SIZE: Size of document;

- FILE_EXTENSION: Characters of file name indicating the relevant program used to open the file;

- ORIGINAL_FILEPATH: Original location of file;

- DATE_CREATED: Original date document created;

- TIME_CREATED: Original time file created;

- DATE_SENT: Date email was sent;

- TIME_SENT: Time email was sent;

- PARENT_DATE: The date of the parent email applied to the parent email and all attachments;

- DATE_RECEIVED: Date email was received;

- TIME_RECEIVED: Time email was received;

- DATE_MODIFIED: Date an electronic document was last modified;

- HASH_VALUE: The MD5 or SHA-1 hash value;

---

[3] The parties agree that the SUBJECT field is not required to be produced if the document requires redaction.

[4] The parties agree that the FILE_NAME field is not required to be produced if the document requires redaction.

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

- DOC_TYPE: Description of document (email, attachment, electronic document, hard copy, etc.);

- NATIVE_LINK: The native file link for agreed upon native files, if applicable (*e.g*., for Excel files);

- REDACTED: Populate "Yes" if a document contains a redaction;

- CONFIDENTIALITY: Populate "Yes" if a document is designated as Confidential Material;

- AEO: Populate "Yes" if a document is designated as containing Attorneys' Eyes Only (AEO) Material;

- EXPORT_CONTROLLED: Populate "Yes" if a document is designated as containing Export-Controlled Material;

- PRODUCTION_VOLUME: Identification of production media or volume name of each individual production deliverable.

The parties are not obligated to manually populate any of the foregoing fields if such fields cannot be extracted from a document, with the exception of fields that require population in the first instance (*e.g*., BEGBATES). The foregoing list of metadata types is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

5. <u>Metadata Load File.</u> Each production shall be accompanied by a Concordance or ASCII delimited load file (.DAT) that can be loaded into commercially acceptable database software (e.g., Relativity). The first line of each text file must contain a header identifying each

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

data field name (i.e., header row). Each document within the database load file must contain the same number of fields as defined in the header row.

6.     <u>Hard-Copy Documents.</u>  All hard copy documents will be scanned and produced in electronic format. Each party's production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be converted into single-page TIFF images and produced following the same protocol set forth herein or as otherwise agreed, unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Images of all file labels, file headings, and file folders associated with any hard copy document will be produced with the images of the hard copy documents. Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension). The database load file shall include the following fields: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, CONFIDENTIALITY, AEO, EXPORT_CONTROLLED, REDACTED, OCR_TEXT, and PRODUCTION_VOLUME.

7.     <u>Specific File Types.</u>  The following production standards apply to specific file types:

- MS Office files, WordPerfect, other standard documents, such as PDF documents and the like, will be converted to single-page TIFF images and produced consistent with the specifications herein. If the document contains comments or tracked changes, the TIFF images shall be generated to include the comments or track changes contained in the file.

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

- Email and attachments should be converted to single-page TIFF images and produced consistent with the specifications provided herein. Attachments shall be processed as separate documents, and the text database load file shall include a field in which the producing party shall identify the production range of all attachments of each e-mail.

- The parties shall process presentations (MS PowerPoint, Google Presently, Google Docs) in native format.

- The parties shall produce spreadsheets (e.g. MS Excel, Google Trix, Google Sheets) in native format, where available and not redacted. TIFF images of spreadsheets need not be produced unless a spreadsheet is redacted. If a spreadsheet requires redaction, then TIFF images of the spreadsheet after the redaction has been applied will be produced and the native file and full text will be withheld. Alternatively, spreadsheets with redactions may be supplied in native format with redactions applied and redacted text removed.

- Digital photographs will be produced as image files.

8.    <u>Production Media.</u>  Documents and ESI shall be produced on optical media (CD or DVD), external hard drives, or via an FTP site, or similar, readily accessible electronic media (the "Production Media"). Each piece of Production Media shall identify a production number corresponding to the party and production with which the documents on the Production Media are associated (*e.g.*, "[Defendant Party] 001", "[Plaintiff Party] 001"), as well as the volume of the material in that production (e.g., "-001", "-002"). For example, if the first production from a party comprises document images on three hard drives, the party shall label each hard drive in the

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

following manner: "[Party Name] 001-001", "[Party Name] 001-002", and "[Party Name] 001 003." Each piece of Production Media shall be labeled to also identify: (1) the production date; and (2) the production number range of the materials contained on the Production Media.

9. <u>Encryption.</u>  Industry-standard encryption tools and practices must be used when transferring data between parties. Passwords must be at least 8 characters with a mix of character sets and sent in a separate communication from the encrypted data.

10. <u>No Identification of Responsive RFPs.</u>  The parties agree that the producing party is under no obligation to identify the request for production to which a particular document is responsive to, nor is the producing party obligated to identify (by Bates numbers or otherwise) which documents are being produced in response to a particular request for production. Rather, the parties recognize and agree that each party will produce sizeable document productions pursuant to the procedures of Sections C-H of this Order and otherwise that are not segregated or categorized by request for production, but rather are produced in response to the requesting party's document requests as a whole.

**H.   Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

possession, custody, or control in accordance with the requirements of the Federal Rules of Civil Procedure.

2.     The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI where that data is created after a disclosure or response is made.

3.     Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

    a.  Deleted, slack, fragmented, or other data (including "unallocated" space on hard drives) only accessible by forensics.

    b.  Data duplicated in any electronic backup system for the purpose of system recovery or information restoration, including, but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten, or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy.

    c.  Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    d.  On-line access data such as temporary internet files, history, cache, cookies, and the like.

    e.  Data in metadata fields that are frequently updated automatically, such as last-opened dates.

    f.  Back-up data that are duplicative of data that are more accessible elsewhere.

    g.  Server, system or network logs.

    h.  Data remaining from systems no longer in use that is unintelligible on the systems in use.

    i.  Electronic data (*e.g.*, email, calendars, contact data, and notes) stored on or sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices).

    j.  Other electronic instant messages (*e.g.*, Skype, WhatsApp).

    k.  Voicemail messages.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

l.   Telephone recordings.

m.  Logs of calls.

n.   Data stored on photocopiers, printers, scanners, and fax machines;

o.   Any other file types subsequently agreed to by the parties.

Unless otherwise agreed to or ordered by the Court, the parties are not required to obtain a forensic image of preserved data if the native files and associated metadata are preserved as set forth in this Order.

**I.    Privilege and Work Product[5]**

1.      A producing party shall create a privilege log of all documents withheld from production (in whole or in part) on the basis of a privilege or protection, unless otherwise agreed or excepted by this Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, and shall include at least the following fields: bates range; author/recipient and to/from/cc/bcc names; the subject matter and title; date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than 60 days prior to the close of discovery, unless an earlier deadline is agreed to by the parties.

2.      Redacted documents will be logged and designated as such on the privilege log only upon the reasonable request of the non-producing party in the event the basis for redaction

_____

[5] As used herein, the term "privilege" encompasses both the attorney-client privilege as well as the work product doctrine and any other applicable privilege.

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

is not evident from the face of the redacted document. Individual redactions need not be individually logged.

3.      With respect to privileged or work-product information and/or communications with outside counsel generated after the filing of the complaint, the parties are not required to include any such information in privilege logs.

4.      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5.      Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.  Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party or destroyed as provided in Section J (Clawback Procedures), and its production shall not constitute a waiver of such protection.

6.      Testifying experts shall not be subject to discovery on any draft of their reports in this action and such draft reports, notes, or outlines for draft reports are also exempt from production and discovery pursuant to Fed. R. Civ. P. 26(b)(4)(C) and (D). Materials, communications, and other information exempt from discovery under this paragraph shall be treated as attorney work product for the purposes of this action.

**J.      Clawback Procedures**

1.      Should the requesting party identify a document in its possession that was produced in discovery in this action that appears on its face to be privileged, the requesting party

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

will provide prompt notice to the producing party of the possible inadvertent production of privileged material and identify the document(s) in question by Bates number.

2.       Upon learning (either independently or upon notice by the requesting party) that a document produced in discovery in this action should have been withheld on privilege grounds (an "Inadvertently-Produced Document"), the producing party may seek the return and/or destruction of any such document.

3.       The producing party must request the return or destruction of any Inadvertently-Produced Document(s) promptly after discovering the inadvertent production. To do so, the producing party must issue a written clawback notice that identifies the document by Bates number and states the basis for withholding it from production. Within five (5) business days of when the producing party issues a clawback notice, the requesting party must return or destroy all copies of the document and certify in writing that it has done so. Electronic copies of the Inadvertently-Produced Document shall be removed from any electronic system or database of the requesting party, including sent and received email.

4.       If the Inadvertently-Produced Document requires redaction only, the producing party shall provide to the requesting party a redacted version of the document by submitting a replacement production containing the original production with the redacted documents included.

5.       The producing party will thereafter include the Inadvertently Produced Document on its privilege log (as amended, if necessary).

6.       The return of an Inadvertently-Produced Document does not preclude the requesting party from challenging the designation of the document on grounds other than waiver by inadvertent production. To present a challenge to a privilege designation (if needed), the requesting party will be entitled to rely exclusively upon the producing party's privilege log and

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

shall not be entitled to retain any copy of the Inadvertently-Produced Document for the purpose of such challenge.

**K.     Miscellaneous Provisions**

1.     By preserving ESI for this litigation, the parties do not waive any objections to the discoverability, confidentiality, or privileged nature of any documents, including, without limitation, objections as to the proportionality of the discovery sought.

2.     Unless otherwise agreed or ordered by the Court, each party shall bear the costs of preserving, collective, processing, reviewing, and producing its own documents and ESI.

3.     The parties anticipate that amendments to this Order may be necessary to address developments in discovery and in the litigation. The parties commit to negotiating any amendments to this Order in good faith.

4.     Nothing in this Order shall affect either party's obligations to preserve documents or information for other purposes, including pursuant to court order, administrative order, statute, or in regard to other pending or anticipated litigation.

5.     Nothing in this Order shall eliminate or alter either party's obligation to retain native format copies, including associated metadata, of all documents produced in this litigation, together with original hard copy documents for all paper discovery produced in the litigation.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

DATED:  August 12, 2020

*s/ Jessica M. Andrade*
Jessica M. Andrade, WSBA No. 39297
Jessica.andrade@polsinelli.com
**Polsinelli P.C.**
1000 Second Avenue, Suite 3500
Seattle, WA  98104
Telephone:  206.393.5400

Alan A. D'Ambrosio, *pro hac vice*
adambrosio@dunnington.com
William F. Dahill, *pro hac vice*
wdahill@dunnington.com
Joseph Johnson
jjohnson@dunnington.com
Kamanta C. Kettle
kkettle@dunnington.com
**Dunnington, Bartholow & Miller LLP**
230 Park Avenue, 21st Floor
New York, NY  10169
Telephone:  212.682.8811

*Attorneys for Plaintiff Leonardo S.p.A.*

*s/ Steve Y. Koh*
Steve Y. Koh, WSBA No. 23284
SKoh@perkinscoie.com
Brendan J. Peters, WSBA No. 34490
BPeters@perkinscoie.com
Michael E. Scoville, WSBA No. 44913
MScoville@perkinscoie.com
Mica D. Klein, WSBA No. 46596
MicaKlein@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

*Attorneys for Defendant The Boeing Company*

## ORDER

Based on the foregoing, IT IS SO ORDERED.

DATED:  August 13, 2020

JAMES L. ROBART
United States District Judge

DISCOVERY ESI ORDER
(No. 2:19-cv-2082) – 22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 12, 2020, I caused to be served via the CM/ECF system a true and correct copy of the foregoing document and that service of this document was accomplished on all parties in the case by the CM/ECF system.

*s/ Mica D. Klein*
Mica D. Klein, WSBA No. 46596
MicaKlein@perkinscoie.com

CERTIFICATE OF SERVICE
(No. 2:19-cv-2082) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000