1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10 LEONARDO, S.P.A.,

CASE NO. C19-2082JLR

11                   Plaintiff,

ORDER GRANTING IN PART
AND DENYING IN PART

12      v.

PLAINTIFF'S MOTION TO
COMPEL

13 THE BOEING COMPANY,

14                 Defendant.

15              **I.    INTRODUCTION**

16       Before the court is the parties' LCR 37 joint submission regarding Plaintiff

17 Leonardo, S.p.A.'s ("Leonardo") motion to compel Defendant The Boeing Company

18 ("Boeing") to answer its interrogatories.  (Joint Sub. (Dkt. # 33).)  The court has

19 considered the parties' joint submission, the relevant portions of the record, and the

20 applicable law.  The court also heard oral argument by the parties.  (*See* 3/9/21 Min.

21 Entry (Dkt. # 36).)  Being fully advised, the court GRANTS in part and DENIES in part

22 Leonardo's motion to compel.

ORDER - 1

## II.   BACKGROUND

**A.   Factual Background**

This case arises out of Boeing's contract with Leonardo to manufacture component parts for the Boeing 767 aircraft.  (*See generally* Am. Compl. (Dkt. # 12).)  Leonardo has manufactured aircraft parts called "slats" for Boeing for over 40 years.  (*Id.* ¶ 2.)  In June 2019, Boeing gave notice that Leonardo's slats were "nonconforming" to its specifications because of tool marks and foreign object debris ("FOD") found within enclosed portions of the slats.  (*Id.*)  According to Leonardo, Boeing started to make repairs to the slats on its own before giving Leonardo notice of the nonconformances, contrary to the terms of the parties' contract.  (*Id.*)

On August 27, 2019, Boeing provided a "slat cost recovery" invoice of over $26 million to Leonardo and demanded payment within 30 days, or else Boeing would apply a set-off against Leonardo's future invoices, which include other aircraft components in addition to the slats at issue.  (*See id.* ¶ 3.)  Leonardo rejected the invoice.  (*Id.*)  Thereafter, Boeing began to implement its set-off remedy.  (*Id.* ¶ 4.)  Between September 2019 and January 2020, Boeing refused to pay any of Leonardo's outstanding invoices for parts produced under the 767 program.  (*See id.*)

On December 24, 2019, Boeing sent Leonardo another slat cost recovery invoice totaling over $33 million.  (*Id.* ¶ 6.)  This invoice included $29 million for purported "contractor disruption."  (*Id.*)  Leonardo refers to the $59 million total of the two slat cost recovery invoices as the "Slat Cost Recovery Claim."  (*See* Joint Sub. at 1.)

Leonardo alleges that Boeing's claims for nonconformance are based on its use, beginning in 2019, of a form of visual inspection technology called a Borescope.  (Am. Compl. ¶ 11.)  Leonardo contends that the tool marks and FOD that Boeing now claims are nonconformances are instead a by-product of Boeing's own designs.  (*Id.* ¶¶ 11-12.) The only change, according to Leonardo, is that the tool marks and FOD were not detectable prior to Boeing's use of the Borescope.  (*Id.*)

Leonardo alleges that Boeing breached the parties' Master Program Contract ("MPC") by failing to provide required notices and to perform timely inspections.  (*Id.* ¶ 14.)  It alleges that a number of the slats that Boeing now claims are nonconforming were delivered to Boeing as early as 2014 and had been previously inspected and accepted by Boeing.  (*Id.*)  It claims that Boeing's set-off and the scope of its alleged damages exceed the scope of remedies provided in the MPC, and that the damages are speculative and inflated.  (*Id.* ¶¶ 15-17.)  Leonardo also contends that it is entitled to payment for repairs that it made to "improperly rejected" slats.  (*Id.* ¶ 21.)

Boeing counters that the set-offs are contractually permitted; that Leonardo conceded before filing suit that the slats contained metal chips and other defects that were "not acceptable anomalies;" and that it has only deducted $35 million from its invoices rather than the $59 million Leonardo claims  (*See* Joint Sub. at 3.)

**B.    Procedural Background**

Leonardo filed suit on December 23, 2019.  (*See* Compl. (Dkt. # 1).)  It amended its complaint on January 12, 2020.  (*See* Am. Compl.)  It alleges claims for breach of contract; declaratory judgment; a permanent injunction requiring Boeing to pay Leonardo

1    all sums due and owing and to refrain from withholding future sums due; and breach of

2    the implied covenant of good faith and fair dealing.  (*See id.*)  On February 10, 2020,

3    Boeing filed its answer and alleged counterclaims for breach of contract and breach of

4    warranty.  (Answer (Dkt. # 22).)

5         The parties filed their LCR 37 joint submission on January 26, 2021.  (Joint Sub.)

6    Leonardo asks the court to compel Boeing to fully answer its Interrogatories Nos. 2-7 and

7    to add a custodian to its searches for electronically stored information.  (*Id.* at 2.)  Boeing

8    contends that it has answered all of Leonardo's interrogatories in a manner consistent

9    with Federal Rule of Civil Procedure 33.  (*Id.* at 4.)

10        The court ordered the parties to file a supplemental joint statement detailing the

11   efforts they made to resolve their dispute and the issues that remained for the court's

12   decision.  (*See* 2/26/21 Min. Entry.)  The parties filed their joint statement on March 4,

13   2021.  (*See* Supp. Statement (Dkt. # 35).)  The court held telephonic argument on March

14   9, 2021, and stated its tentative rulings on the record.  (*See* 3/9/21 Min. Entry.)  The court

15   sets forth its final rulings and order below.

16                              **III.    RULINGS**

17        The court's rulings apply Federal Rule of Civil Procedure 33(d), which provides:

18        If the answer to an interrogatory may be determined by examining, auditing,
          compiling, abstracting, or summarizing a party's business records . . . and if
19        the burden of deriving or ascertaining the answer will be substantially the
          same for either party, the responding party may answer by:
20
          (1) specifying the records that must be reviewed, in sufficient detail to enable
21        to interrogating party to locate and identify them as readily as the responding
          party could . . . .
22

Fed. R. Civ. P. 33(d).  Where Boeing relies on Rule 33(d) to answer Leonardo's

interrogatories, the court will hold Boeing to strict compliance with Rule 33(d)(1)'s

specificity requirement.

**A.     Interrogatory No. 2**

Interrogatory No. 2 asks Boeing to provide detailed information about each slat

that it identified in its response to Leonardo's Interrogatory No. 1, which lists the slats

that are at issue in Boeing's Slat Cost Recovery Claim.  (*See* Joint Sub. at 5 (quoting

Interrogatory No. 2).)  The court ORDERS that:

- Boeing shall produce all Product Verification and Non-Conformance Order records for all slats Boeing identified in Interrogatory No. 1, and supplement its response to Interrogatory No. 2, Subparts 2(b)-(f) to identify the newly produced records that answer each subpart;

- Boeing shall identify by Bates number the communications that Boeing contends will answer Subpart 2(f) (*see* Joint Sub. at 9 (Boeing's response to Subpart 2(f), stating that Leonardo can determine the answer to Subpart 2(f) by reviewing "records of verbal and email communications illustrating how Boeing employees at times provided advance notice to Leonardo employees of nonconformances . . . ."));

- Boeing shall answer Subpart 2(g), either by providing the dates of notice or by identifying by Bates number the documents that Boeing contends will answer Subpart 2(g);

- Leonardo shall identify to Boeing, to the extent possible, any additional documents that it contends contain the information necessary to answer Subparts 2(c)-(e); and

- Boeing shall either produce the documents identified by Leonardo as containing the information necessary to answer Subparts 2(c)-(e) or, if it has already produced those documents, identify the documents by Bates number.

**B.    Interrogatory No. 3**

Interrogatory No. 3 asks Boeing to provide information regarding the date Boeing first used a Borescope to inspect:  (a) anything it assembles, manufactures, and/or produces; (b) any part supplied for the 767 aircraft; and (c) 767 aircraft slats.  (*See* Joint Sub. at 15.)

The court ORDERS that Boeing shall answer Subparts 3(a)-(c).

**C.    Interrogatory No. 4**

Interrogatory No. 4 asks Boeing to answer whether, prior to using the Borescope to inspect the 767 slats, Boeing ever inspected enclosed or covered areas of those slats, and, if so:  (a) to identify the methods of such inspections; and (b) to identify each 767 slat Boeing rejected as a result of such inspections.  (*See* Joint Sub. at 19.)

The court ORDERS that Boeing shall answer Subpart 4(b) by producing and identifying with specificity the documents that would enable Leonardo to identify each 767 slat that was inspected using visual inspection and rejected in 2014, 2017, and 2018.

//

//

**D.      Interrogatory No. 5**

Interrogatory No. 5 asks Boeing to "describe with particularity the data, factors and formula(e)" it used to calculate the amounts it sought in the August 2019 and December 2019 cost recovery invoices.  (*See* Joint Sub. at 24.)

The court ORDERS that Boeing shall produce and identify with specificity the documents relating to the labor and materials costs, wrap rates, and disruption factors that it claimed in its August 2019 and December 2019 cost recovery invoices, and to supplement its response to Interrogatory No. 5 with identification of these supporting documents by Bates number.

**E.      Interrogatory No. 6**

Interrogatory No. 6 asks Boeing to identify any other damages, aside from those identified in its response to Interrogatory No. 5, that Boeing asserts in connection with the subject matter of this dispute.  (*See* Joint Sub. at 28.)  Boeing objected on the ground that the interrogatory calls for expert testimony and stated that it would produce its damages calculations and associated data in accordance with the court's expert disclosure deadlines.  (*See id.*)

The court ORDERS that Boeing shall identify any additional types or categories of damages beyond those it identified in its response to Interrogatory No. 5.  Boeing need not provide detailed calculations for these additional damages until the expert disclosure deadline.

//

//

1    **F.    Interrogatory No. 7**

2          Interrogatory No. 7 asks Boeing to "identify the nature and substance of every

3    claim asserted by a customer of Boeing (including the identity of such customer) as

4    referenced in Boeing's letter to Leonardo dated May 2, 2019, and August 27, 2019."

5    (*See* Joint Sub. at 31.)

6          The court DENIES Leonardo's motion to compel a response to Interrogatory

7    No. 7.  Boeing states that it is not claiming damages for third-party claims in this

8    litigation, and Leonardo has not explained why the information is relevant aside from

9    Boeing's previous assertion in the letters that it might seek to recover for third-party

10   claims.  If Boeing seeks later to add damages for third-party claims, it may be judicially

11   estopped from doing so.

12   **G.    Custodian Elizabeth Lund**

13         Leonardo asks the court to direct Boeing to include Elizabeth Lund, Boeing's Vice

14   President and General Manager, Supply Chain, as a custodian within its searches for

15   relevant ESI documents.  (*See* Joint Sub. at 34.)

16         The court DENIES Leonardo's request to add Ms. Lund as a custodian.  The

17   parties' agreed ESI protocol provides that each party would identify 15 custodians most

18   likely to have ESI in their possession, custody, or control.  (*See id.* at 35.)   The court will

19   hold the parties to their agreement.

20   //

21   //

22   //

**H.      Procedure in the Event of Future Discovery Disputes**

Finally, the court ADMONISHES the parties that they shall, in the future, comply with this court's chambers procedures for discovery disputes[1] and Local Rules W.D. Wash. LCR 37(a).  The court reminds the parties that "all discovery matters are to be resolved by agreement if possible" and that "before moving for an order relating to discovery, the movant must request a conference with the court."  (Sched. Ord. (Dkt. # 26) at 2 (citing LCR 37(a) and Fed. R. Civ. P. 16(b)(3)(B)(v)).)

IT IS SO ORDERED.

Dated this 10th day of March, 2021.

JAMES L. ROBART
United States District Judge

---

[1] *See* https://www.wawd.uscourts.gov/sites/wawd/files/RobartDiscoveryDisputes.pdf

ORDER - 9